ORDERED.

**Dated:  November 13, 2015**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                     Case No. 8:13-bk-08406-MGW
                                                           Chapter 11
Ronald William DeMasi
and Susan J. DeMasi,

      Debtors.
_____/

Gulf Coast Endoscopy Center                                Adv. No.: 8:13-ap-00858-MGW
of Venice, LLC, et al.,

      Plaintiffs,
v.

Ronald W. DeMasi, M.D.,

      Defendant.
_____/

Anesthesia Associates of Southwest                         Adv. No.: 8:13-ap-00890-MGW
Florida, LLC, et al.,

      Plaintiffs,
v.

Ronald William DeMasi,

      Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Plaintiffs—two medical practices—allege that Dr. DeMasi (a managing member of both of them) intentionally concealed their management company's poor performance to further an undisclosed business interest he had with the management company or its subsidiary. In short, the Plaintiffs' management company created a subsidiary to manage, operate, and handle billing for endoscopic ambulatory surgical centers. But the Plaintiffs were the management company's only endoscopic ambulatory surgical center client. And the management company could not market itself to new clients if it did not have an existing one. So, according to the Plaintiffs, Dr. DeMasi hid the fact that he had a financial interest in the management company and its subsidiary and that the management company was doing a poor job handling the Plaintiffs' billing and collections to keep the Plaintiffs from terminating the management company.

The Plaintiffs claim Dr. DeMasi's material misrepresentations and omissions give rise to state law claims for fraud, breach of fiduciary duty, breach of contract, and breach of the implied duty of good faith and fair dealing and render the debt they incurred as a result of Dr. DeMasi's fraud nondischargeable. This Court concludes that the Plaintiffs failed to prove Dr. DeMasi made any actionable misrepresentations or concealed any material facts or, if he did, that the misrepresentations or omissions were the cause of any injury they suffered. And because the Plaintiffs remaining claims largely hinge on the Plaintiffs' allegations that Dr. DeMasi made material misrepresentations or concealed material facts, the Plaintiffs failed to meet their burden of proof on those claims. Accordingly, Dr. DeMasi is entitled to judgment in his favor.

### FINDINGS OF FACT

The facts of this case, which span nearly a decade, are exceedingly complex. And they are hotly contested. In fact, the facts giving rise to the Plaintiffs' fraud, fiduciary duty, contract,

and nondischargeability claims have largely been presented to two separate triers of fact—one an arbitration panel and the other a state court judge.[1] And the two triers of fact—although dealing with different claims—reached two different conclusions when it came to the facts. After hearing four days of live testimony and reviewing hundreds of exhibits, the Court reaches the following findings of fact with respect to the liability phase of these proceedings.

### The Parties

Dr. DeMasi, the Defendant, is a gastroenterologist who began his medical practice in August 1998, when he joined his father's practice in Venice, Florida.[2] Within a year or two after joining his father's practice, Dr. DeMasi (and his father, Dr. Clem DeMasi) began discussions with four other doctors—Dr. Howard Grossbard, Dr. Robert Felman, Dr. Peter Dumas, and Dr. Jay Raja—about opening their own endoscopic surgical center.[3] It seems the doctors, who were performing their surgical procedures at Venice Health Park, decided it would be more profitable for all of them if they owned their own surgical center,[4] as well as the practice that provided anesthesia services to the surgical center.

So Drs. DeMasi, Grossbard, Felman, Dumas, and Raja formed Gulf Coast Endoscopy Center of Venice, LLC ("GCEC"), one of the Plaintiffs, in 1999 and Anesthesia Associates of

---

[1] As discussed below, the Plaintiffs in these proceedings initiated an arbitration demand against their management and billing companies. Gulf Coast Digestive Health, LLC, owned by four of the Plaintiffs' members, sued Dr. DeMasi. Although the claims against Dr. DeMasi were slightly different, the facts giving rise to those claims were essentially the same. The state court judge ruled in favor of Gulf Coast Digestive on its fraud and other claims. Pl.'s Ex. 621. This Court later determined that the state court judgment was res judicata and entitled to full faith and credit and that the judgment was nondischargeable as a matter of law. *Kondapalli v. DeMasi (In re DeMasi)*, 2015 WL 3956135, at *5-6 (Bankr. M.D. Fla. Jun. 26, 2015).

[2] *GCEC, et al. v. DeMasi*, Adv. No. 8-13-ap-00858-MGW, Adv. Doc. No. 79 at p. 180, l. 16 – p. 181, l. 6.

[3] Trial Tr. Vol. I at p. 213, ll. 13-22.

[4] *Id.*

Southwest Florida, LLC ("Anesthesia Associates"), the other Plaintiff, the following year.[5]

GCEC was formed to build and operate the surgical center.[6] Anesthesia Associates, as the name

suggests, would provide the anesthesia services. In 2003, Dr. Ravi Kondapalli bought out Dr.

Clem DeMasi's interest in GCEC and Anesthesia Associates.[7]

### Management of the Plaintiffs

The Plaintiffs' operating agreements provided that the companies would be managed by a

board of directors.[8] The board of directors consisted of all six members: Dr. DeMasi, Dr. Clem

DeMasi, Dr. Grossbard, Dr. Felman, Dr. Dumas, and Dr. Raja. Dr. Kondapalli later took Dr.

Clem DeMasi's place on the board of directors when he bought out his interest in GCEC and

Anesthesia Associates. The members also elected Dr. DeMasi and Dr. Grossbard to formally

serve as GCEC's Co-Medical Directors.[9]

### The Development, Management, and Billing Agreements

In February 2000, GCEC entered into a development agreement with Surgical Synergies,

Inc. ("SSI").[10] Under the terms of the development agreement, SSI was responsible for

overseeing the construction of the surgical center.[11] In exchange, GCEC paid SSI a $75,000 fee

and reimbursed SSI for its expenses.[12] At the same time, GCEC entered into a four-year

---

[5] Def.'s Exs. 1 & 2.

[6] Def.'s Ex. 1.

[7] Trial Tr. Vol. III at p. 249, ll. 4-7.

[8] Def.'s Exs. 1 & 2.

[9] Trial Tr. Vol. I at p. 215, ll. 19-25.

[10] Pl.'s Ex. 1.

[11] *Id.* at ¶ 2.

[12] *Id.* at ¶ 4.

management agreement with SSI that required SSI to maintain GCEC's facilities; supervise the
day-to-day business operations; prepare accounts receivable reports and monthly financial
statements; and supervise billing and collections.[13] Two years later, after experiencing trouble
with its in-house billing and collections, GCEC contracted with an SSI subsidiary—Surgical
Support Services, LLC ("SSS")—to take over billing and collections for the Plaintiffs.[14]

### The Unfavorable Audits

Six months after SSS took over the Plaintiffs' billings, the companies decided to hire an
independent accounting firm to review SSS's performance.[15] The Plaintiffs selected Kerkering,
Barberio & Co, P.A. to perform the review.[16] Kerkering Barberio proposed to: (i) analyze SSS's
collection activity to ensure that it was timely and correctly billing patients and third-party
payors and properly accounting for payments made; (ii) compare SSS's billings, accounts
receivable aging, and expense relationships to industry benchmarks; and (iii) trace a sampling of
purchase orders to determine whether SSS was properly recording expenses and whether the
expenses were legitimate.[17]

Kerkering Barberio's initial review of SSS's performance, which was summarized in a
May 28, 2003 report, was not favorable.[18] Five days after Kerkering Barberio issued its initial
report, Dr. DeMasi notified the other board members,[19] and Dr. Grossbard notified SSS that the

---

[13] Pl.'s Ex. 2 at §§ 2.1, 2.2 & 6.1.

[14] Trial Tr. Vol. I at p. 218, l. 23 – p. 219, l. 5; Trial Tr. Vol. III at p. 20, l. 21 – p. 21, l. 13.; Pl.'s Exs. 6 & 7.

[15] Pl.'s Ex. 45.

[16] Pl.'s Ex. 208.

[17] *Id.*

[18] Pl.'s Ex. 225.

[19] Pl.'s Ex. 228.

Plaintiffs intended to terminate the billing agreements effective August 30, 2003, if it did not cure the deficiencies outlined in the Kerkering Barberio report and produce substantial improvements in collections.[20] The Plaintiffs also decided to have Kerkering Barberio "audit" SSS's performance for the second half of 2003 (from July through December 2003).[21]

On February 5, 2004, SSI and SSS made their annual presentation to the Plaintiffs' board of directors. During the February 5 board meeting, SSS represented—in a PowerPoint presentation—that collection as a percentage of net revenue for 2003 was 99.6% for GCEC and 103.4% for Anesthesia Associates.[22] SSS also represented—presumably in reference to Kerkering Barberio's audit for the second half of 2003—that the "[o]utside audit [was] favorable."[23]

But Dr. DeMasi, who was in attendance at the February 5, 2004 board meeting, was unaware that the audit for the second half of 2003 had actually not yet been completed. The remaining board members likewise were unaware that audit was not yet complete. The only person who apparently was aware of that fact was Kim Albert, who was GCEC's administrator and had served as a liaison between the Plaintiffs and Kerkering Barberio. On January 29, 2004, one week before the February 5, 2004 board meeting, Albert was copied on an e-mail informing her that the information for the Kerkering Barberio audit was going out that day.[24] Although Albert was aware the audit had not yet been completed, she never corrected SSI's representation that the outside audit was favorable.

---

[20] Pl.'s Ex. 229.

[21] Pl.'s Ex. 50.

[22] Pl.'s Exs. 56 at 46.

[23] *Id.*

[24] Pl.'s Ex. 246.

When the audit for the second half of 2013 was completed on March 4, 2004,[25] nearly a month after the February 5, 2004 board meeting, it was not favorable. In particular, Kerkering Barberio's March 4, 2004 report showed that SSS failed to meet the Medical Group Management Association's ("MGMA") median for net charges (year-to-date), net collections (year-to-date), and accounts receivable.[26] It appears none of the other board members received a copy of the March 4, 2004 audit until seven years later. Dr. DeMasi, however, acknowledges receiving a copy of the March 4, 2004 review at some point and learning that it was unfavorable,[27] but he apparently never provided a copy of the report or disclosed its findings to the other board members.

Dr. DeMasi did, however, provide a copy of a subsequent report by Kerkering Barberio to the other board members during an August 11, 2004 board meeting.[28] On June 18, 2004, Kerkering Barberio reported the findings of its review of SSS's performance for the five months ended May 31, 2004.[29] On the one hand, Kerkering Barberio's report reflected that the amount of GCEC's accounts receivable was higher than the MGMA standards, as was the amount of the accounts receivable that was older than 90 days.[30] On the other hand, the report reflected that there had been a significant improvement in overall net collections.[31] At the August 11, 2004

---

[25] Def.'s Ex. 22.

[26] *Id.*

[27] Trial Tr. Vol. II at p. 175, ll. 3-17.

[28] Pl.'s Ex. 62.

[29] Pl.'s Ex. 616.

[30] *Id.*

[31] *Id.*

board meeting, Dr. DeMasi characterized the report as reflecting that SSS was "doing a good job with billings and collections."[32]

### Dr. DeMasi's Involvement in SSE

On January 20, 2005, Dr. DeMasi and Kim Albert (GCEC's office administrator) wrote to SSI's President, Dr. Michael Ribaudo, expressing an interest in joint venturing with SSI to develop and manage endoscopic surgery centers.[33] It took Dr. DeMasi some time and research to prepare the letter.[34] After all, Dr. DeMasi wanted Dr. Ribaudo to respond favorably to his inquiry.[35] So he spent time on internet research and surveying other physicians to determine whether the proposed joint venture was viable.[36] And Dr. Ribaudo did, in fact, respond favorably. On April 8, 2005, Dr. DeMasi and Albert met with Dr. Ribaudo and others from SSI to discuss Surgical Synergies Endoscopy, LLC ("SSE"),[37] the newly formed entity that would manage endoscopic surgery centers.

Following the creation of SSE, Dr. DeMasi worked to market SSE's services. The parties disagree over how much time Dr. DeMasi and Albert spent working on SSE-related activities. Dr. DeMasi and Albert suggest it was minimal. The Plaintiffs contend it was significant and that the work oftentimes occurred during GCEC's business hours. Regardless, there is no question that Dr. DeMasi and Albert prepared PowerPoint presentations and worked on brochures,

---

[32] Pl.'s Ex. 62.

[33] Pl.'s Ex. 225.

[34] Trial Tr. Vol. II at p. 48, l. 25 – p. 51, l. 2.

[35] *Id.* at p. 50, ll. 7-15.

[36] *Id.* at p. 48, l. 25 – p. 51, l. 2.

[37] Pl.'s Ex. 262.

business cards, and other marketing materials. At the time, Drs. Dumas, Felman, Raja, and

Kondapalli were unaware of Dr. DeMasi's involvement with SSE.

In fact, they first learned of his involvement with the company during an October 4, 2005

meeting. On September 22, 2005, two weeks prior to the October 4, 2005 meeting, SSI sent the

Plaintiffs' board members a letter introducing them to SSE, informing them that it was interested

in acquiring an endoscopy center near them from a retiring physician, and proposing to have

Albert manage GCEC and the endoscopy center SSE was considering acquiring.[38] The purpose

of the October 4, 2005 meeting was to discuss SSI's September 22 offer. During or shortly after

the October 4, 2005 meeting, Dr. DeMasi disclosed to the other board members that he had an

interest in developing and managing surgery centers and that he would be participating in any

deal that came to be.[39] At that point, the other board members knew Dr. DeMasi was working on

deals with SSI and SSE.[40]

Nearly a year later, Dr. Felman came across a website for SSE when looking for Dr.

Ribaudo's e-mail address.[41] When he looked at the website, he saw that Dr. DeMasi was listed as

President and Kim Albert was listed as Vice-President of Development.[42] Dr. Felman and other

doctors claimed they had no idea Dr. DeMasi and Albert were officers of SSE. So the GCEC

board called an emergency meeting on September 10, 2006 to have Dr. DeMasi explain why he,

along with Albert, were listed as SSE officers on the company's website.[43]

---

[38] Pl.'s Ex. 288.

[39] Trial Tr. Vol. II at p. 221, l. 8 – p. 224, l. 17.

[40] Trial Tr. Vol. IV at p. 77, ll. 2-4.

[41] Trial Tr. Vol. III at p. 183, l. 19 – p. 184, l. 9.

[42] Pl.'s Ex. 355.

[43] Trial Tr. Vol. I at p. 267, ll. 3-14.

The parties disagree over what happened at that meeting. Drs. Kondapalli and Duma recall Dr. DeMasi expressing surprise he was listed as SSE's President and denying he had any involvement with SSE.[44] Dr. Grossbard recalled Dr. DeMasi denying he was the President of SSE, but Dr. Grossbard recalled being aware Dr. DeMasi had management aspirations that involved working with SSI.[45] For his part, Dr. DeMasi concedes that he told the other doctors he was unaware that SSE had an active website listing him as President and that he would request SSI to remove his name as President of SSE and take down the SSE website.[46] But it also appears from what occurred at the meeting that the other doctors knew Dr. DeMasi had some involvement with SSE. During the September 10, 2006 meeting, Dr. Felman recalled Dr. DeMasi being asked if "he had done deals, if he had made money, if he had consummated deals,"[47] and while Dr. DeMasi denied any deals had been consummated,[48] he did tell the others he had been "trying to do some things."[49]

### Formation of Gulf Coast Digestive

In July 2006, about two months before the September 10, 2006 meeting, four of the Plaintiffs' members—Drs. DeMasi, Dumas, Grossbard, and Kondapalli—formed a third medical practice called Gulf Coast Digestive Health, LLC.[50] Gulf Coast Digestive, like the Plaintiffs, contracted with SSI and SSS to manage its operations and oversee its billings. Also like the

---

[44] *Id.* at p. 267, ll. 12-24; p. 271, l. 2 – p. 272, l. 6.

[45] Trial Tr. Vol. IV at p. 80, ll. 10-14; p. 103, ll. 8-12.

[46] Trial Tr. Vol. II at p. 227, ll. 13-22; p. 243, ll. 5-10.

[47] Trial Tr. Vol. III at p. 193, ll. 11-24.

[48] *Id.*

[49] *Id.* at p. 193, l. 25 – p. 194, l. 5.

[50] Pl.'s Ex. 444.

Plaintiffs, Gulf Coast Digestive had problems with SSS's billings.[51] Gulf Coast Digestive had retained Kerkering Barberio to audit SSS's performance. Kerkering Barberio's October 8, 2007 report identified a number of deficiencies.[52] At an October 2007 Gulf Coast Digestive board meeting, Dr. Dumas expressed his desire to terminate SSI and SSS based on their poor performance.[53]

According to the Plaintiffs, Dr. DeMasi did not take the news well. Dr. Dumas testified that Dr. DeMasi became so enraged during the board meeting that he threw a metal object at him and told him to quit.[54] The following day, Dr. Dumas, in fact, resigned from Gulf Coast Digestive.[55] As part of his resignation, Dr. Dumas and Gulf Coast Digestive signed a separation agreement.[56] Because Dr. Dumas did not trust Dr. DeMasi, he insisted Gulf Coast Digestive include the following representation in his separation agreement:

> Dr. DeMasi represents and warrants that he has not had and does not new (sic) have any financial or other interest, direct or indirect, in Surgical Synergies, Inc. or America Pathology Labs, LLC and further warrants that he has not had and does not now have any relationship with SSI's principal J. Michael Ribaudo, through which Dr. DeMasi, or anyone on his behalf, receives any benefits, financial or otherwise, other than that which has been expressly disclosed to the Other Member Physicians in writing.[57]

---

[51] Pl.'s Ex. 624.

[52] Pl.'s Ex. 374.

[53] Trial Tr. Vol. I at p. 254, l. 1 – p. 257, l. 8.

[54] *Id.* at p. 254, l. 1 – p. 257, l. 8.

[55] *Id.*

[56] Pl.'s Ex. 15.

[57] *Id.* at ¶ 7.

### SSI and SSS are Terminated

Eventually, the Plaintiffs and Gulf Coast Digestive all terminated their agreements with SSI. On March 10, 2008, Gulf Coast Digestive terminated its agreement with SSI effective March 14, 2008.[58] Three months later, the Plaintiffs notified SSI that it would not be renewing its management agreements with SSS.[59] According to the Plaintiffs' June 20, 2008 notices, the nonrenewal would become effective on December 31, 2008.[60]

### The Litigation

Starting in September 2010, the first of several lawsuits arising out of the relationship among the Plaintiffs, Gulf Coast Digestive, Dr. DeMasi, and SSI were filed. On September 8, 2010, Gulf Coast Digestive sued Dr. DeMasi in state court for fraud, breach of fiduciary duty, breach of contract, and breach of the implied duty of good faith and fair dealing. One month later, GCEC filed an arbitration demand against SSI and SSS seeking damages for, among other things, breach of contract and breach of fiduciary duty. The arbitrator largely ruled in favor of SSI and SSS on GCEC's claims.[61] The state court, however, entered judgment in favor of Gulf Coast Digestive on its fraud, breach of fiduciary duty, and contract claims.[62]

After the state court ruled in favor of Gulf Coast Digestive, the Plaintiffs sued Dr. DeMasi in state court for fraud, breach of fiduciary duty (care, loyalty, and good faith), breach of contract, and breach of the implied duty of good faith and fair dealing.[63] The Debtor

---

[58] Pl.'s Ex. 17.

[59] Def.'s Exs. 60 & 61.

[60] *Id.*

[61] Def.'s Ex. 76.

[62] Pl.'s Ex. 621.

[63] Adv. No. 13-ap-00858, Adv. Doc. No. 1-2.

subsequently filed for bankruptcy and removed the Plaintiffs' state court action to this Court.[64]

Not long after the Debtor filed for bankruptcy and removed the Plaintiffs' state court action to

this Court, the Plaintiffs filed an adversary complaint seeking to have the debt they incurred as a

result of Dr. DeMasi's fraud determined nondischargeable.[65]

The Court agreed to consolidate the removed state court action and the Plaintiffs'

dischargeability proceeding for trial.[66] By agreement of the parties, the Court bifurcated the

proceedings into the two phases: liability and damages.[67] The Court tried the liability phase of

the removed state court action and dischargeability proceeding on September 21, 22, 24 and 25,

2015.  The Court now enters these findings of fact and conclusions of law with respect to the

liability phase of these proceedings.

## CONCLUSIONS OF LAW[68]

All of the Plaintiffs' claims—both in the removed state court action and the

dischargeability proceeding—arise out of the same alleged fraudulent scheme. According to the

Plaintiffs, Dr. DeMasi joint ventured with SSI to develop and manage endoscopic ambulatory

surgery centers. Dr. DeMasi would profit—either through finders fees or an equity stake in

SSI—for each surgery center SSE signed up. In the Plaintiffs' telling of the story, there were two

---

[64] Doc. No. 1; Adv. No. 13-ap-00858, Adv. Doc. No. 1.

[65] *Anesthesia Associates of Southwest Florida v. DeMasi*, Adv. No. 8:13-ap-00890-MGW, Adv. Doc. No. 1. Gulf Coast Digestive also sought to have its state court judgment determined to be nondischargeable. Adv. No. 13-ap-889, Adv. Doc. No. 1. This Court ultimately determined that the state court's judgment was res judicata and entitled to full faith and credit and that the judgment was nondischargeable as a matter of law. *Kondapalli v. DeMasi (In re DeMasi)*, 2015 WL 3956135, at *5-6 (Bankr. M.D. Fla. Jun. 26, 2015).

[66] Adv. No. 13-ap-00858, Adv. Doc. No. 170.

[67] Adv. No. 13-ap-00858, Adv. Doc. No. 136.

[68] This Court has jurisdiction over these proceedings under 28 U.S.C. § 1334. These are core proceedings under 28 U.S.C. § 157(b)(2)(B) & (I). Despite actively participating in these proceedings up through trial, neither party has objected to this Court entering a final judgment. So all parties are deemed to have consented to this Court's authority to enter a final judgment under 28 U.S.C. § 157(c)(2).

obstacles to Dr. DeMasi's joint venture. One, GCEC was SSI's only ambulatory endoscopic surgery center client, and it was doing a poor job. Two, Dr. DeMasi's financial interest in SSE created a conflict of interest with the Plaintiffs, and had the other doctors found out about it, they would have terminated the Plaintiffs' contracts with SSI. Because SSE could not market itself to other ambulatory endoscopic surgery centers if it lost its only client in that niche market, Dr. DeMasi was forced to hide SSS's poor performance, as well as his relationship with SSE.

The Court is not persuaded by the Plaintiffs' theory of the case. For one, the Court is not persuaded that Dr. DeMasi made any actionable misrepresentation or concealed any material fact. Nor is the Court persuaded Dr. DeMasi breached his fiduciary duty to the Plaintiffs. In fact, the evidence at trial was that Dr. DeMasi did not intentionally conceal any of the unfavorable audits or his relationship with SSE. Accordingly, the Court finds in favor of Dr. DeMasi on all of the Plaintiffs' claims.

### GCEC and Anesthesia Associates failed to prove their fraudulent misrepresentation claim.

To prevail on their fraudulent misrepresentation claims, GCEC and Anesthesia Associates must prove that (i) Dr. DeMasi made a false statement of material fact or failed to disclose a material fact; (ii) Dr. DeMasi knew his statement was false at the time he made it; (iii) Dr. DeMasi intended that the Plaintiffs would rely on his false statement; and (iv) the Plaintiffs were injured by acting in reliance on Dr. DeMasi's false statement or material omission.[69] Here, the Plaintiffs fail to prove two of the required elements.

---

[69] *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

*The Plaintiffs fail to prove an*
*actionable misrepresentation or omission.*

The Plaintiffs' fraud claims are primarily based on three alleged misrepresentations or omissions: (i) Dr. DeMasi failed to disclose his financial interest in SSI and SSE; (ii) Dr. DeMasi stayed silent at the February 5, 2004 board meeting when SSI represented that Kerkering Barberio's outside audit was "favorable"; and (iii) Dr. DeMasi represented that SSS was doing a "good job" when, according to MGMA standards, it was not.[70] For different reasons, none of the three alleged misrepresentations or omissions are actionable.

The Plaintiffs failed to prove Dr. DeMasi
concealed his financial interest in SSI and SSE.

As a threshold matter, the Court is not convinced Dr. DeMasi had a financial interest in SSI. Dr. DeMasi's supposed financial interest in SSI arose out of a December 3, 2001 "agreement" between SSI and Dr. DeMasi.[71] Under that alleged agreement, Dr. DeMasi would receive a $25,000 consulting fee for each surgical center or hospital he referred to SSI.[72] But the December 3, 2001 "agreement" was really a letter from SSI's president, Dr. Ribaudo, and Dr. DeMasi credibly testified that he viewed Dr. Ribaudo's December 3, 2001 letter as a proposal—one that he never acted on.[73] Dr. DeMasi, however, unquestionably had a relationship with SSE

---

[70] The Plaintiffs also rely on a fourth alleged misrepresentation, namely that Dr. DeMasi misrepresented to the Gulf Coast Digestive board members that SSI threatened to sue the company for terminating SSI's management contract unless GCEC and Anesthesia Associates renewed their SSI management agreements for another five years. Adv. No. 13-ap-00858, Adv. Doc. No. 194 at ¶ 112. There was evidence at trial to suggest there may be some truth to that alleged misrepresentation. Pl.'s Ex. 637 at p. 160, l. 4 – p. 161, 15. But in any case, there was no evidence that Dr. DeMasi's alleged misrepresentation caused the Plaintiffs to renew their management agreements with SSI or refused to terminate them.

[71] Pl.'s Ex. 192.

[72] *Id.*

[73] Trial Tr. Vol. II at p. 187, l. 16 – p. 188, l. 15; Pl.'s Ex. 192.

beginning in January 2005, when he expressed his interest in forming a company to manage gastroenterological centers.[74]

The Plaintiffs contend Dr. DeMasi took four steps to conceal that relationship. First, Barbara Baker, an SSI employee, testified that her understanding was "mum's the word" regarding Dr. DeMasi's involvement in the development of SSE[75] and that she was not supposed to discuss SSE with any of the other GCEC doctors because the deal (i.e., the creation of SSE to develop and manage endoscopic surgery centers) was only among herself, Dr. Ribaudo, Kim Albert, and Dr. DeMasi.[76] Second, Dr. DeMasi allegedly denied any involvement in SSE at the September 10, 2006 meeting when Dr. Felman and others confronted him with a printout of the SSE website listing him as president of the company. Third, Dr. DeMasi represented in the separation agreement between Gulf Coast Digestive and Dr. Dumas that he had no direct or indirect financial interest in SSI or no expectation of a financial benefit other than that which had been expressly disclosed to the other doctors in writing.[77] Fourth, in a November 22, 2009 letter to the other GCEC and Anesthesia Associates members, Dr. DeMasi denied any involvement in SSI.[78] The Court, however, is not persuaded that Dr. DeMasi actively concealed his relationship with SSE.

Significantly, two members of GCEC and Anesthesia Associates—Dr. Felman and Dr. Grossbard—specifically testified that they were aware Dr. DeMasi had some relationship with SSI and SSE. During the September 2006 meeting when Dr. Felman and others confronted Dr.

---

[74] Pl.'s Ex. 255.

[75] Pl.'s Exs. 281, 282 & 283.

[76] Pl.'s Ex. 426 at p. 109, l. 13 – p. 110, l. 25.

[77] Pl.'s Ex. 15.

[78] Pl.'s Ex. 409.

DeMasi about the SSE website listing him as president, Dr. Felman recalled Dr. DeMasi being asked if "he had done deals, if he had made money, if he had consummated deals" with SSI.[79] Dr. DeMasi denied any deals had been consummated (in fact, none had been consummated).[80] But according to Dr. Felman, Dr. DeMasi did tell the others that he had been "trying to do some things."[81] Similarly, Dr. Grossbard testified that he was aware Dr. DeMasi was working on a deal with SSI and SSE as early as October 4, 2005—ten months after SSE was formed.[82]

Despite the Plaintiffs' claim that Dr. DeMasi was not a credible witness, the Court found his testimony that he disclosed his interest in or relationship with SSE at that October 4, 2005 meeting credible. Had he not, the October 4, 2005 meeting would not have made any sense. Why would Dr. Ribaudo, SSI's President, send the GCEC board members the September 22, 2005 proposal (where he proposes to acquire another endoscopic surgery center and have a GCEC employee serve as the administrator) if he had no dealings with Dr. DeMasi? The Plaintiffs' real complaint seems to be that they were not aware of the precise details of Dr. DeMasi's relationship with SSE.

And there may some truth to that. It does appear the other doctors were generally unaware of the extent to which Dr. DeMasi participated in SSE's marketing efforts. They also appeared to be unaware of his precise role with SSE. Was he an officer or director? But it is implausible for them to claim that they were aware he was working on deals with SSI and SSE, while at the same time claim they were somehow unaware he had a financial interest in SSE. By disclosing he was working on deals with SSI and SSE, Dr. DeMasi was, almost by definition,

---

[79] Trial Tr. Vol. III at p. 193, ll. 11-24.

[80] *Id.*

[81] *Id.* at p. 193, l. 25 – p. 194, l. 5.

[82] Trial Tr. Vol. IV at p. 77, ll. 2-4.

disclosing he had some financial interest with the company (even though the Plaintiffs may not have been aware of the specifics of his financial relationship).

<u>The Plaintiffs failed to prove Dr. DeMasi concealed the March 3, 2004 audit</u>.

Perhaps the most compelling allegation that Dr. DeMasi misrepresented or omitted a material fact is the claim that Dr. DeMasi sat silent while SSI represented at the February 5, 2004 board meeting that Kerkering Barberio's outside audit was favorable. There is no question, of course, that the audit was not complete at the time and that when it was complete it was anything but favorable. The Court, however, is not convinced that Dr. DeMasi was aware the audit was not completed or that it would ultimately prove to be unfavorable at the time SSI made its misrepresentation.

At trial, Dr. DeMasi specifically testified he did not know the audit had not been completed as of the February 5, 2004 meeting.[83] The Plaintiffs argue Dr. DeMasi's trial testimony here is inconsistent with his testimony in Gulf Coast Digestive's state court action.[84] In fact, his trial testimony here was not inconsistent with his previous trial testimony. In the prior case, Dr. DeMasi never acknowledged that he knew the audit had not been completed. Instead, he testified that he did not recall asking SSI how it could represent that the outside audit was favorable when GCEC had not even received it back.[85] So Dr. DeMasi's testimony that he was unaware the audit had not been completed effectively went unrebutted.

And the notion that Dr. DeMasi hid the second audit does not square with the other evidence at trial. The Court understands the Plaintiffs' theory that Dr. DeMasi wanted to conceal

---

[83] Trial Tr. Vol. II at p. 173, l. 17-23.

[84] Adv. No. 13-ap-00858, Adv. Doc. No. 194 at ¶ 23.

[85] Gulf Coast Digestive Trial Tr. at p. 110, ll. 9-16.

SSS's performance given his desire to maintain his relationship with SSI, which dated back to

2001. If that is true, why did Dr. DeMasi disclose the May 28, 2003 audit that led to threats to

terminate SSI's management agreement in the first place? And why would Dr. DeMasi disclose

the June 18, 2004 audit, which the Plaintiffs contend shows SSS was doing a poor job? The

Plaintiffs have offered no evidence or theory why Dr. DeMasi would disclose the first and third

audits but not the second one. The more logical inference is that he did not know the audit had

not been completed as of the February 5, 2004 board meeting.

Now it is true that Kim Albert, who was present at the February 5 meeting, knew the

audit had not been completed.[86] One reason she knew the audit had not been completed was

because she had been copied on a January 29, 2004 e-mail advising her that the information for

the audit was being sent to Kerkering Barberio that day.[87] But there was no evidence at trial that

Albert communicated that fact to Dr. DeMasi. And the Plaintiffs have not articulated any legal

basis for imputing Albert's knowledge to Dr. DeMasi. Accordingly, the Court is not persuaded

Dr. DeMasi failed to disclose that the Kerkering Barberio audit had not been completed as of the

February 5, 2004 board meeting.

The Plaintiffs cannot base their misrepresentation claim on
Dr. DeMasi's August 2004 statement that SSS was doing a "good job."

The second most compelling allegation that Dr. DeMasi misrepresented a material fact

has to do with his characterization of the June 18, 2004 Kerkering Barberio audit. On June 18,

2004, Kerkering Barberio issued its third audit.[88] Dr. DeMasi discussed the June 18, 2004 audit

at an August 11, 2004 board meeting and represented to the board that, according to the MGMA

---

[86] Trial Tr. Vol. I at p. 35, ll. 10-23; Pl.'s Ex. 246.

[87] *Id.*

[88] Pl.'s Ex. 616.

standards, SSS was "doing a good job with billings and collections."[89] The Plaintiffs contend Dr. DeMasi's representation that SSS was doing a "good job" is flatly contradicted by the June 18, 2004 report.

As the Plaintiffs point out, the report does reflect that GCEC was below the MGMA median in a number of categories. For instance, the net collections (month-to-date) were lower than the MGMA median. And the total accounts receivable were higher than the MGMA median. The Plaintiffs concede the June 18, 2004 report reflects only one instance—net collections (year-to-date) —where SSS's performance was positive:

> Overall net collections have increased due to the collection of prior balances from last year. This has caused the net collection percentage to be over 100% on a year-to-date basis, a significant improvement from last year's collection efforts.[90]

But the Plaintiffs argue that one isolated positive finding does not save Dr. DeMasi's otherwise false statement that SSS was doing a "good job."

The Court is not convinced that Dr. DeMasi misrepresented SSS's performance. After all, the report does reflect—as the Plaintiffs concede—that net collections (year-to-date) had improved significantly. And Dr. Grossbard indicated in his June 2, 2003 letter that GCEC would terminate SSS's contract unless there was a substantial improvement in collections.[91] So it would not be unreasonable for Dr. DeMasi to focus on year-to-date collections. It is true, of course, that accounts receivable were still a problem. A comparison of the March 4, 2004 and June 18, 2004 reports, however, indicates a significant improvement in the accounts receivable picture, as

---

[89] Pl.'s Ex. 62.

[90] *Id.*

[91] Pl.'s Ex. 229.

well.[92] In fact, Kerkering Barberio noted that the accounts receivable had "continued to decrease to much more acceptable levels over the last year," although Kerkering Barberio acknowledged the amount of receivables were still above the MGMA standard.[93]

But even if the June 18, 2004 report flatly contradicts Dr. DeMasi's representation that SSS was doing a good job, Dr. DeMasi's representation cannot form the basis of a fraud claim. In this instance, the same thing that gives rise to the Plaintiffs' alleged fraud claim (i.e., the June 18, 2004 report contradicting Dr. DeMasi's representation that SSS was doing a good job) dooms the Plaintiffs' claim. To the extent the June 18, 2004 report shows unequivocally that SSS was doing a bad job, Dr. DeMasi disclosed the report to the other board members (a copy of the report was attached to the August 11, 2004 meeting minutes).[94] The law is clear in Florida that a claim for misrepresentation cannot lie where the falsity of the misrepresentation is known or obvious.[95] By providing a copy of the June 18, 2004 report to other board members, the falsity of Dr. DeMasi's statement would have become known or obvious.

*The Plaintiffs failed to prove Dr. DeMasi's*
*alleged misrepresentations or omissions caused them harm.*

Even assuming that any of the three alleged misrepresentations or omissions were actionable, the Plaintiffs still failed to prove their claims at trial. Before trial, the parties agreed to bifurcate the trial into two phases: the first phase would deal with liability; the second phase, if necessary, would address damages. Although the parties agreed they did not have to put on evidence of damages, the Plaintiffs were still required to prove that Dr. DeMasi's alleged

---

[92] Pl.'s Exs. 22 & 62,

[93] Pl.'s Ex. 62.

[94] *Id.*

[95] *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

misrepresentations or omissions caused them to be injured. Here, the Plaintiffs failed to prove causation.

The Plaintiffs' causation argument is straightforward: Had they known that Kerkering Barberio's audits were unfavorable or that Dr. DeMasi had a financial interest in SSI or SSE, they would have removed Dr. DeMasi as Co-Medical Director and terminated SSI's management agreement.[96] In fact, Drs. Dumas, Raja, Felman, and Kondapalli each testified at trial that they would have removed Dr. DeMasi as Co-Medical Director and terminated SSI had they known about SSS's poor performance or Dr. DeMasi's relationship with SSI or SSE.[97] But that self-serving testimony was belied by the evidence at trial.

For the most part, the evidence at trial was that the Plaintiffs' members were indifferent toward the audits. To be sure, Dr. Grossbard wrote a letter threatening to terminate SSI after Kerkering Barberio's first audit. But what about after the second audit? Drs. Dumas, Felman, Raja, and Kondapalli all claim they never saw it until sometime in 2010. The Court accepts that testimony. But it is troubling to the Court that none of the doctors ever asked about the report during the intervening six years. Instead, they accepted at face value a representation by the very company that was being audited that the audit was favorable. Worse, when Dr. DeMasi actually gave Drs. Dumas, Felman, Raja, and Kondapalli a copy of the June 18, 2004, which the Plaintiffs claim shows Dr. DeMasi lied and that SSS was doing a poor job, they took no action whatsoever to terminate SSI or SSS.

---

[96] Adv. No. 13-ap-00858, Adv. Doc. No. 194 at ¶ 13.

[97] Trial Tr. Vol. I at p. 277, l. 20 – p. 280, l. 4; Trial Tr. Vol. III at p. 140, l. 17 – p. 143, l. 21; p. 164, l. 4 – p. 165, l. 5; p. 272, l. 14 – p. 275, l. 9.

In fact, the Plaintiffs waited more than four years after receiving a copy of the unfavorable June 18, 2004 audit to terminate SSI.[98] And even then, they did not actually terminate SSI for cause.[99] They simply chose not to renew the management agreements. Even more telling, the same day the Plaintiffs notified SSI they were not renewing the management agreements, they sent a later to SSI indicating they were "interested in engaging in a dialogue with" SSI regarding a new contract and asking SSI to contact them at its earliest convenience.[100] Perhaps the Plaintiffs suffered damages by not terminating SSI sooner than they did. But the fact is all of the evidence at trial—other than the self-serving testimony of the other GCEC and Anesthesia Associates members—shows that Dr. DeMasi's alleged misrepresentations or omissions regarding the Kerkering Barberio audits did not keep the Plaintiffs from terminating SSI's management agreements sooner.

The same is true with respect to Dr. DeMasi's relationship with SSE. Drs. Felman and Grossbard both testified they were aware that Dr. DeMasi was trying to do deals with SSI and SSE.[101] Yet, Dr. Felman, who testified that the Plaintiffs would have terminated SSI had they known about any such relationship, never took any steps to do so. To the contrary, Dr. Felman testified that when he learned Dr. DeMasi was "trying to do some things" with SSI and SSE, he told Dr. DeMasi the board did not think he could continue working with SSE and still be loyal to GCEC and that Dr. DeMasi had a choice to make.[102] There was no mention of removing Dr.

---

[98] Def.'s Exs. 60 & 61.

[99] *Id.*

[100] Def.'s Ex. 62.

[101] Trial Tr. Vol. IV at p. 77, ll. 2-4; Trial Tr. Vol. III at p. 193, l. 25 – p. 194, l. 5.

[102] *Id.* at p. 193, ll. 6-24.

DeMasi as Co-Medical Director or terminating SSI. So the Plaintiffs failed to prove that they would have terminated SSI had they known about Dr. DeMasi's relationship with SSE.

In short, the Plaintiffs failed to prove any actionable misrepresentation or omission by Dr. DeMasi. And even if they had proved an actionable misrepresentation or omission, they failed to meet their burden of proof that the misrepresentation or omission was the cause of whatever damages they suffered. For those reasons, Dr. DeMasi is entitled to judgment in his favor on the Plaintiffs' fraud claims.

### The Plaintiffs have failed to meet their burden on their dischargeability claims.

To prevail on their nondischargeability claim under Bankruptcy Code § 523(a)(2)(A), the Plaintiffs must essentially prove the same elements they have to prove to prevail on their state law fraud claims.[103] But there is one significant difference. Under state law, the Plaintiffs do not need to prove reliance to prevail on an intentional misrepresentation claim.[104] But claims under § 523(a)(2)(A) require justifiable reliance.[105] Because the Plaintiffs failed to prove an actionable misrepresentation or omission or causation, the Court does not need to address the reliance issue, and Dr. DeMasi is entitled to judgment in his favor on the Plaintiffs' § 523(a)(2)(A) claim.

### The Plaintiffs failed to prove their breach of fiduciary duty claims.

Dr. DeMasi does not dispute that he owed the Plaintiffs a fiduciary duty—namely, duties of loyalty, care, and good faith—by virtue of being one of the Plaintiffs' managing members.[106]

---

[103] *In re Johannessen*, 76 F.3d 347, 350 (11th Cir. 1996).

[104] *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

[105] *Field v. Mans*, 516 U.S. 59, 73 (1995); *In re Johannessen*, 76 F.3d at 350; *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998).

[106] Adv. No. 13-bk-00890, Adv. Doc. No. 92 at 16.

But the parties do seem to disagree over the precise nature of those duties and whether Dr. DeMasi satisfied them. The starting point for determining the duties a managing member owes a Florida limited liability company is Chapter 408, Florida Statutes.[107]

By statute, the duty of loyalty is limited to (as is relevant here) refraining from dealing with the Plaintiffs on behalf of an adverse party or competing with the Plaintiffs before dissolution.[108] The duty of care is also statutorily limited. It only prohibits Dr. DeMasi from engaging in grossly negligent or reckless conduct; intentional misconduct; or a knowing violation of the law.[109] As for the duty of good faith, the statute simply provides that Dr. DeMasi does not violate that duty merely because his conduct furthers his own interest.[110]

While limited liability company members may not agree to eliminate any of those duties by contract, they may limit them in their operating agreement.[111] For instance, members of a limited liability company may identify specific types or categories of activities that do not violate the duty of loyalty so long as the agreement is not manifestly unreasonable.[112] Members may also determine the standards by which performance of the duty of good faith is to be measured.[113] Here, the operating agreements for GCEC and Anesthesia Associates identify conduct that does

---

[107] Ch. 608, Fla. Stat. (2006). In 2013, the Florida legislature adopted the Florida Revised Liability Company Act, which governs all limited liability companies effective January 1, 2015. § 605.1108, Fla. Stat. All of the acts alleged in the Plaintiffs' complaint took place more than five years before the statute took effect. So the Court has cited to Chapter 608. But, as the Plaintiffs point out, there are no material differences between the statutes. Adv. No. 13-ap-00858, Adv. Doc. No. 194 at ¶ 90.

[108] § 608.4225(a)(2)-(3), Fla. Stat. (2006).

[109] § 608.4225(b), Fla. Stat.

[110] § 608.4225(c)-(d), Fla. Stat.

[111] § 608.423, Fla. Stat. (2002).

[112] § 608.423(2)(b)(1), Fla. Stat.

[113] § 608.423, (2)(c), Fla. Stat.

not violate the duty of loyalty by providing that neither GCEC nor Anesthesia Associates (nor any of their members) shall have the right to participate in any other member's business venture, and no member is obligated to present his own investment opportunities to GCEC or Anesthesia Associates.[114]

Having set forth the scope of Dr. DeMasi's duties in abbreviated fashion, the Court concludes that the Plaintiffs failed to prove that Dr. DeMasi breached any of his duties. The Plaintiffs' fiduciary duty claims, like their fraud claims, are premised on the allegation that Dr. DeMasi misrepresented or concealed relevant information from the rest of the board. So the Plaintiffs were required to prove that Dr. DeMasi concealed or mischaracterized the nature of unfavorable audits and his interest in SSI or SSE. In the Court's view, Dr. DeMasi adequately disclosed relevant information to the board.

In many instances, the rhetoric of the Plaintiffs' argument does not square with the actual evidence presented at trial. The Plaintiffs weave an elaborate tale of how Dr. DeMasi concealed the Kerkering Barberio audits in order to hide SSS's poor performance from the rest of the board. In actuality, the Plaintiffs offered three unfavorable audits into evidence.[115] And the evidence at trial showed Dr. DeMasi disclosed two of those three audits to the other board members.[116] The only one he did not disclose was the March 4, 2004 audit. But the Court finds it hard to believe that nondisclosure of the March 4, 2004 audit was part of some elaborate scheme to conceal SSS's performance from the Plaintiffs given that he disclosed the third audit six

---

[114] Def.'s Ex. 1 at ¶ 2.8; Def.'s Ex. 2 at ¶ 2.7.

[115] Pl.'s Exs. 225, 248 & 616.

[116] Pl.'s Exs. 62 & 228.

months later, and in the Plaintiffs' view, the third audit was no more favorable than the first two. So the Court is not persuaded that Dr. DeMasi hid SSS's poor performance.

Nor is the Court persuaded that Dr. DeMasi concealed his relationship with SSE. As discussed above, the Court finds Dr. DeMasi's testimony that he told the other board members that he had a relationship with SSE during the October 4, 2005 meeting credible. In fact, that testimony is consistent with the testimony by Drs. Felman and Grossbard that they were both aware that Dr. DeMasi was working on deals with SSI and SSE. While the other board members may not have been aware of the exact details of Dr. DeMasi's relationship with or financial interest in SSI or SSE, the Plaintiffs cannot credibly contend they were unaware that he had a relationship or some expectation of a financial interest—whatever interest that may be.

The real basis of the Plaintiffs' breach of fiduciary duty claims is that Dr. DeMasi was serving himself—not the Plaintiffs. According to the Plaintiffs, SSI's 2001 proposal to pay Dr. DeMasi a finder's fee for each surgery center he referred to SSI and later Dr. DeMasi's financial interest in SSE motivated Dr. DeMasi to do whatever it took—including concealing SSS's performance and his relationship with SSE—to keep SSI on board as the Plaintiffs' management company.[117] In the Plaintiffs' view, Dr. DeMasi was obligated to disclose that actual or potential conflict so the other board members could put his recommendation to retain SSI and SSS in perspective.

The Court is not persuaded for three reasons. First, as Dr. DeMasi points out, the operating agreements for GCEC and Anesthesia Associates contemplate members can participate in competing businesses without disclosing those opportunities to the other members.[118] Second,

---

[117] Adv. No. 13-ap-00858, Adv. Doc. No. 194 at ¶¶ 92 & 93.

[118] Def.'s Ex. 1 at ¶ 2.8; Def.'s Ex. 2 at ¶ 2.7.

Florida law expressly provides that a member does not violate the duty of good faith simply because his conduct furthers his own interest.[119] Third, the Court is not convinced there is some unavoidable conflict between SSI and SSS, the Plaintiffs, and Dr. DeMasi. After all, SSI and SSS are paid based on a percentage of the Plaintiffs' net revenues.[120] And Dr. DeMasi likewise received distributions based on the Plaintiffs' financial success, which hinged, in part, on SSS's ability to bill and collect charges. The Court finds it implausible that Dr. DeMasi would jeopardize the success of GCEC and Anesthesia Associates all for the mere prospect of potential finder's fees or equity in SSI in the event that SSE signed up a surgery center—something, by the way, that apparently never happened in the first two to three years SSE was in existence (or the more than eight years Dr. DeMasi had a right to a finder's fee from SSI under the 2001 proposal). So the Court rejects the idea that Dr. DeMasi's relationship was some inherent conflict.

The Court also rejects the implicit claim that the only reason Dr. DeMasi recommended—perhaps insisted—that the Plaintiffs keep SSI and SSS around was to serve his own financial interests. The evidence at trial showed the following: (i) the Plaintiffs initially did their own in-house billing and collections but experienced significant problems; (ii) Dr. DeMasi apparently had a philosophical belief that medical practices like the Plaintiffs' should be managed by a management company; and (iii) the Plaintiffs told SSI they would terminate their management agreements unless there were significant improvements in collections, and in fact, there were significant improvements in collections. In the Court's view, it is just as likely— perhaps more so—that Dr. DeMasi recommended keeping SSI and SSS on board because it was

---

[119] § 608.4225(c)-(d), Fla. Stat.

[120] Pl.'s Ex. 6 at ¶ 4.1; Pl.'s Ex. 7 at ¶ 4.1.

in the Plaintiffs' best interests than it was because he was furthering his own interest to the

Plaintiffs' detriment. In short, the Plaintiffs failed to prove by that Dr. DeMasi breached his

fiduciary duties to the Plaintiffs.

### GCEC and Anesthesia Associates failed to prove their contract and good faith and fair dealing claims.

The Plaintiffs' contract claims are based solely on the allegation that Dr. DeMasi engaged

in fraud and breached his fiduciary duties to the Plaintiffs.[121] Because the Court has concluded

Dr. DeMasi did not defraud the Plaintiffs or breach his fiduciary duties to them, the Plaintiffs

have failed to meet their burden of proof on their contract claim. And because they failed to

prove their contract claim, the Plaintiffs cannot prevail on their breach of the implied duty of

good faith and fair dealing claim.[122] So Dr. DeMasi is entitled to judgment in his favor on the

Plaintiffs' contract and good faith and fair dealing claims.

### Conclusion

In a related adversary proceeding, this Court ruled it was required to give preclusive

effect to a state court's findings that Dr. DeMasi defrauded the Plaintiffs and breached the

fiduciary duties he owed to him.[123] Here, the Court is not similarly bound by any prior factual

determination. Having considered the testimony of the witnesses and other evidence presented at

trial, including assessing the demeanor and credibility of the witnesses, the Court concludes the

Plaintiffs have failed to meet the burden of proof on their fraud, breach of fiduciary duty,

contract, duty of good faith and fair dealing, and nondischargeability claims. Accordingly, Dr.

DeMasi is entitled to judgment in his favor on all counts. The trial scheduled for December 14,

---

[121] Adv. No. 13-ap-00858, Adv. Doc. No. 194 at ¶¶ 100-04.

[122] *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001).

[123] *Kondapalli v. DeMasi (In re DeMasi)*, 2015 WL 3956135, at *5-6 (Bankr. M.D. Fla. Jun. 26, 2015).

2015, is canceled. The Court will enter a separate final judgment consistent with these Findings

of Fact and Conclusions of Law.

> Attorney David S. Jennis is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties who are non-CM/ECF users and file a proof of service within 3 days of their entry.

**Steven D. Hutton, Esq.**
**Przemyslaw Dominko, Esq.**
    **Hutton & Dominko, PLLC**
**David S. Jennis, Esq.**
**Kathleen L. DiSanto, Esq.**
    **Jennis & Bowen, P.L.**
*Counsel for Defendant*

**Stuart J. Levine, Esq.**
**Edward J. Brown, Esq.**
    **Walters Levine Klingensmith & Thomison, P.A.**
*Counsel for Plaintiffs*